Michelle Schneider-Hinds Mary Tallin Michelle Schneider-Hinds Michelle Schneider-Hinds Michelle Schneider-Hinds Michelle Schneider-Hinds Michelle Schneider-Hinds Michelle Schneider-Hinds Michelle Schneider-Hinds Michelle Schneider-Hinds So, just going back to the scope part of this versus whether or not she had implied permission. She had never been allowed to drive off the farm, right? Correct. Okay, but you say that's just a matter of scope as to whether or not she was on a public road versus whether or not she had driven on a road on on the farm ground that that just as a matter of scope and not a matter of determining whether she actually have permission to drive on a public road. Yeah, I think is a directly analogous here. And when that case, the employee was not supposed to be driving the rental car, except for business purposes and gotten an accident when they were using it for personal business. So, yeah, that's but but the purpose of the driving was what was at issue there. It wasn't the roads that he could be on. He was driving on public roads in terms of the express permission. Right. And and yes. Okay, but here we have it's qualitatively different. You've got a farm ground that she's been allowed to drive on versus a public road and still you say that's a matter of scope. That's our yes, that's our contention. Okay. All right. Thank you. During his deposition, Mr Coons testified that Angeles began driving at the age of 12 operating and motors forklifts and other vehicles as part of the family's farming business. Angeles also confirmed that she started driving at the age of 11 or 12 typically driving a couple of times a week for tasks such as transporting people between buildings in the house. On the night of the accident, she was left home alone with a truck and his keys accessible to her. And we contend that this was negligent entrustment on the part of Mr Coons. What if she had taken a road trip to Indiana, and the accident occurred in Indiana still you would say this is a matter of scope. Yes, your honor, I think once you entrust the vehicle, what that person does with it is would be within the scope of negligent entrustment. Also, can I ask a question? Did Angelina when asked indicate that? I'm sorry, did Jacob indicate when asked if Angelina had ever previously driven the truck involved in this accident? Not that I know of. I believe I believe the testimony was that she had driven in at least once before. Okay, that's not the answer to the question. The question was, did Jacob in response to the questioning. Indicate that when asked if Angelina had ever previously driven the truck involved in the collision say, not that I know of. Yes, your honor, I think the testimony. So, the answer is yes. Now, the next question is, did Angelina indicate that she had only driven that truck on the farm once, not off the truck, not off the farm though. Yes, the testimony was that she had never driven any of the vehicles off the farm. Well, we're talking about a particular truck. So, back to the question, did she acknowledge that she had only driven that truck one time and that it had been on the farm? Yes, thank you. And that gets to one of our arguments is that we believe that the trial court erred and focusing on that particular vehicle given Angelisa's access to all of the other vehicles on the farm. So, we believe that the most analogous case is the Pelzinski case, which was an employee that was given access to a rental vehicle that he was only supposed to be using for work purposes and ended up getting into an accident when he was using it for personal reasons. So, as we discussed that both Angelisa and Jacob's testimony demonstrated that Angelisa had regular and consistent access to her father's vehicles from the age of 12. She frequently operated not just automobiles, but forklifts and end motors. And we believe that the trial court erred by emphasizing her limited prior use of the particular vehicle that was involved in the accident. Everything that she did on the farm was in terms of operation of a vehicle, regardless of the type of vehicle. That was legal, right? There wasn't anything illegal about the operations that went on at the farm. No, there wasn't. It's as soon as she operates a vehicle on a public roadway that there's illegal conduct, right? There was illegal conduct in this particular case because she was not operating the vehicle for the purpose of the farm operations. There is a law in Illinois that says that you can drive vehicles between farm operations. So, if she had been driving on a public way for the purpose of the farm operations, she may have been driving legally. And she wasn't. So, it was as soon as she got on a public roadway that it was illegal conduct, right? Correct. Okay. So, everything that had been done previously in terms of her activities and driving vehicles done with her parents' permission, that was legal conduct, but they had not provided their permission for her to drive on a public road, or at least there's no evidence that they had. And then on this occasion, she engaged in illegal conduct, correct? On this occasion, yes, it was illegal. Okay. But here you would say that doesn't invoke the question of whether or not she had permission. It's simply that she had permission, but she exceeded the scope of the permission. Correct. And you think that the parents would ever, that we can assume that she had their implied permission to engage in illegal conduct? No, Your Honor, I'm saying she had their implied permission to use the vehicle. But on a public roadway, that would be illegal. Right. I'm not saying she had permission to use the vehicle, and that's where the inquiry should end. Once you entrusted her with the vehicle, you're responsible for what she does with it. Okay, go ahead. Well, that would go back to the scope, then, as to what she was entrusted to do with the vehicle, and based upon past history, that's to work within the confines of the farming operation. Is it not? Again, I'm not saying that historically was how she was using the vehicle. But the fact that she acted outside of that scope is not part of the inquiry into whether there was negligent entrustment. If somebody that's entrusted with a vehicle acts outside the scope, that's still negligent entrustment. That's the Pozanski case. In his ruling, the trial court stated that... So there's no distinction with this case in Pozanski, or in Pozanski, the employee was expressly advised not to use the vehicle for the purpose that he did? Correct. Okay. In Pozanski, the employee was not supposed to be using the vehicle for personal reasons, and he did. And in this case, Angelise had never used the vehicle on a public road, and she did. How do you call those similar? They were both involved, a vehicle used for employment purposes that was used outside of the scope. But in one, there's expressly prohibited from doing so. The other, there's no indication that the person who could have given the authority ever knew that she ever drove it off the farm. And in fact, her own testimony is she never did. She drove it one time, and it was only on the farm. How do you compare those two? I'm still having a problem figuring out how those are similar. Well, in Pozanski, it was an employer-employee relationship. And in this case, Angelise, even though she was very young, she was using the vehicle. Okay, let's start right there. This is an employer-employee. This is father-daughter. Boom, that's gone. Now what? Now what else is similar? That they were using the vehicle outside of the scope, but they had been entrusted with the vehicle to begin with. Well, there's no evidence that she was entrusted with that vehicle. Jacob says no, not to my knowledge. He's the only one who could have given her the authority, and he said no, not to my knowledge. Meaning, which I think is pretty fair to assume, means no, I've never given her authority to use that vehicle off the farm. In fact, he said he didn't know that she'd ever driven the vehicle, period. She's the one who said I drove it one time, and it was on the farm. How can that be authority? Our argument is that she was given access to multiple vehicles, and there's no evidence that she was ever required to seek permission to use them. Okay, well, then again, that's not like Pelzinski, because here you've got a specific directive by the employer saying you can't. But yet you call them similar. Well, the evidence is that she never drove on a public way, and I think implicit in that is that she knew that driving on a public road was not something that her father wanted her to do. She should have done it. But again, that goes back to scope. She was still driving the vehicles regularly on the family farm. She had access to that vehicle. She drove other vehicles. She did have that vehicle one time was her testimony. I'm sorry, go ahead. So the two cases that we think are distinguishable is the Rainey case, Rainey versus Patera, which involved the motorcycle. In that case, the evidence was that the incompetent driver always had to have the father's permission to use the motorcycle, that he was never allowed to use it without express permission. And I think that makes that particular case distinguishable. And then in the Bishop case, also, the child had to have express permission anytime she used the vehicle. She had only used the vehicle on a couple of times in the family's driveway. And there was, in this case, there's no evidence that Angelise ever had to obtain express permission to use vehicles, and she was driving regularly in the family farming operation. So we submit that both of those cases are distinguishable. In regards to the farming operation itself, when she would operate these vehicles, what does the evidence tell us about whether or not she was directed to use a vehicle to perform a task versus her just being told to do something and then she would get to choose which vehicle to use? I don't think that there's any evidence that's very specific in that regard. She just testified that she would use the vehicles in connection with her work. I think she was an office worker at one of the confinement buildings or feed processing buildings. So there is no specific testimony as to whether she was told to use a specific vehicle or not. She just testified that she used them as necessary to perform her job duties. Okay, thank you. Based on all of the foregoing, we respectfully request that the trial court's assembly judgment ruling be reversed, and I will reserve the remainder of my time. All right, thank you. You'll have time in rebuttal. Ms. Tallon, your argument? May it please the court, this matter is here before you on appeal today because the appellants seek to have this court stretch the meaning of negligent entrustment far beyond the bounds of what Illinois courts have held that term to mean to this point. And appellants also want this court to stretch the meaning of the word entrustment far beyond the definition of what that word would mean to a reasonable person. As you've kind of hinted in your questioning, Illinois case law breaks down the notion of negligent entrustment into either express permission or implied permission. We have neither of those types of permission here from the factual record in this case, so the trial court correctly found as a matter of law that summary judgment in favor of my client was appropriate. The danger, if you were to grant the appellant's request to reverse that finding of summary judgment, is that essentially any owner of a vehicle could be opened up to liability for the tort of negligent entrustment based on permitting others to use their vehicles in the past, even when they haven't engaged in any wrongful conduct in permitting use of another vehicle in relation to a specific complaint of occurrence in the future. In this case, it's apparent from the facts, no express permission was given for Angeles Kunz to use her father's truck on the night of the motor vehicle occurrence central to this case. The court should also find consistent with the trial court's ruling, there's no factual basis that a claim for negligent entrustment based on any notion of implied permission existed because there was no implied permission for Angeles Kunz to use her father's truck on the night of the motor vehicle occurrence. Although the court is to look at circumstances of a given situation to determine if reasonable inferences could allow a finding that implied permission had been given in a case of alleged entrustment, there can be no inference of negligence simply based on speculation. Noting that a person just one time gave another person control over a vehicle does not mean you can make a reasonable inference that implied permission was given to use that vehicle for all time for any situation, henceforth forevermore. For example, if a rental company lets me rent a car for a week on vacation, entrusting me with that vehicle, that doesn't mean that after I've turned that car back in, that I can come back to that same car another time weeks later, sneak the keys from the rental desk agent, and I claim I've been permitted to use the vehicle. There hasn't been some permanent permission structure being created to always be able to use that vehicle. Similarly, if my car engine needs work, but I need to get my son to school, and my mother-in-law says, here, use my car until your car gets fixed, she's entrusting me with her car for a limited time. But that doesn't mean four months from now, even after my car is fixed, that I can just stroll in her house and take the keys to her car without her knowing about it, get in a car accident, and then my mother-in-law should be deemed as a matter of law to have given implicit permission for me to use that vehicle. It's important to keep in mind when grounding the court's decision in this case, that the truck that Angelise Kuntz was operating at the time of the accident in question was one she said she had only operated once before and never on a public roadway, according to the deposition testimony in this case. The appellants would have you view a farmer permitting their 14-year-old kid to operate farm equipment on farm ground for a limited purpose and helping out a family farming operation to give implied permission for future conduct if that 14-year-old decides without permission to take a farmer's motor vehicle out on a public roadway for personal use without that farmer's knowledge. If that's the standard, that creates a dangerous slippery slope. The notion of implied permission could mean a parent who gives their kid permission to drive the family's riding lawnmower to mow their yard should be deemed to have entrusted that same kid to drive the family minivan out on a highway if that kid takes the keys to the minivan out on the highway without a parent's permission. Let me ask you a question. Let's just say it's a hypothetical situation. The same family, same farming operation. And let's say that Angelise's father asked her to perform a particular task on the farm. Angelise, in her own mind, figures out that it might be easier to accomplish this task by taking a vehicle on a public roadway in order to accomplish the task. And an accident occurs, such as happened here. Would there have been then permission, implied permission, for her to use the vehicle on a public roadway? Well, in the hypothetical you're presenting, that's a situation where she's operating the vehicle with permission of the father in terms of completing a task. Here in this situation, she was taking it out for personal use, totally without knowledge of the father. So that's a different situation where, in this case, there's no implied permission in this case. So you think there could be negligent entrustment found to exist in the hypothetical? Well, your hypothetical gets similar to the Pelzinski case than what the facts are here. But even still, if she was operating it in connection with farming, there was discussion in the earlier argument about how a minor helping operate a vehicle in connection with farming activity would be still legal. So there'd be more fact questions about what her role was in causing the accident, how liable she was in her conduct. What we don't have here that was in play in Pelzinski was an express direction not to use the vehicle for a certain purpose, that being personal reasons. You didn't have the dad here. We have no evidence that he said, you shall not use this vehicle to drive on a public roadway, right? Right. And that's because I think it was something that he hadn't even contemplated because, as she said, she'd never done anything like this before. He never had any knowledge that she could even do something like this before. So that's not implied permission just because somebody did something you didn't even contemplate them possibly doing. There are all kinds of things that she could have done with the truck that she hadn't done before and that the father hadn't given express permission or expressly prohibited, in which case you would say that shouldn't open him up to liability for negligent entrustment. For instance, he never told her, you know, don't drive across the neighbor's farm and into their pond. And if she had done that, you would say, well, he did not tell her that she could do that. And the simple fact that he didn't tell her she couldn't do it shouldn't open him up to liability. Correct, correct. And we've been talking a lot about the Pelsen C case in this argument, but really the case that presents the most similar factual scenario that came up in our briefing is the Bishop case. Like this case, the Bishop case involved an underage driver who had a limited basis where she was allowed to be in a vehicle. In that case, it was to start the vehicle on cold days like we have today or to move the car for car washing purposes, but not allowed to operate the vehicle on public roadways. And then it turned out without permission, she'd gone out on a public roadway and got in an accident. That's pretty much on point to what we have here. And in the Bishop case, the court held there was no negligent entrustment on the part of the parent. So this court should follow that precedent set forth in Bishop and affirm the trial court's ruling in that regard. Appellant's arguments on the issue of entrustment should be rejected in their briefs where they are speculative in nature and go beyond the factual record. Appellants argued at the outset here that this case deals with the dangers of allowing underage drivers to operate vehicles. Well, no, this appellate argument is about whether implied permission was given in a particular case, not about the problem writ large of underage drivers in this state. Appellant's brief also makes sweeping claims about Angeles having open and notorious access to farm vehicles, but those claims do not have citations to record because they're disconnected from the actual evidentiary record. I understand that this court is charged with reviewing this issue of summary judgment de novo, but in stating the reasons for his opinion on the record, the trial court judge also took issue with the plaintiffs characterizing Angeles as having open and notorious access to the vehicles in question when the factual record of this case is she had driven the truck involved in this accident only once with permission and connection to farm operations, but never on public roads. The record was also devoid of any facts that the defendant father ever allowed on permitted trips out in the truck or any vehicle to happen without the father objecting to that conduct. Angeles said in her deposition testimony, she'd only taken out the vehicle on a public or she had never taken a vehicle out on a public roadway. So her father cannot be in a position to have entrusted the vehicle to her in connection with this accident on a public roadway. Appellants are seeking to stretch the notion of implied permission so far that if their notion of entrustment were to carry the day, a vehicle's owner should be deemed to have given implied permission to use a vehicle that is involved in a car accident. Even if that vehicle owner merely gave past permission for a driver to use a different vehicle for a different purpose for use in a different location, that would create an absurd and unjust result under the law. So I respectfully request that this honorable court affirm the trial court's decision to award summary judgment. Does the court have any additional questions they would like me to address in my remaining time? I don't see any. Thank you. Okay. Hearing no further questions, I will stand on my brief as to any other issues and thank you very much for your time. Okay. Rebuttal argument. Thank you, Your Honor. The testimony in this case established that Angeles was driving her family farm vehicles, including cars, for the family farming operation a couple of times a week. This case is not like the Bishop case where that incompetent driver had only been given access to the car on a few occasions and only in the driveway. Angeles had been driving since she was 11 or 12 years old and further inside the family's farm operation. I believe the evidence established is that. Our burden is to show the negligent entrustment claim is only to show that she was entrusted with the vehicle. The scope is irrelevant, and that's in the Pelzinski case as well as the Rainey case also supports that proposition. In this case, the trial court in its ruling stated that it was looking at the degree of deviation from what was normally allowed and how big of a leap was made from what they did have permission to do versus what they did do. That's the scope, and it's our position that by making that analysis, the judge erred in focusing on the scope of the use instead of whether she was actually entrusted with the vehicle. Unless there's additional questions, I'll stay on my brief as well. Okay, thank you. Thank you both for your arguments. The court will take the case under advisement and will issue a written decision.